## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

MARIO SANTACRUZ,

        **Plaintiff,**

v.                                     **Civil Action No. 3:12-CV-02553-BK**

ALLSTATE TEXAS LLOYDS, INC.,

        **Defendant.**

### MEMORANDUM OPINION

Pursuant to the parties' consent, this case has been transferred to the undersigned for final determination.  (Doc. 10).  The cause is now before the Court on Defendant's *Motion for Summary Judgment*.  (Doc. 15).  For the reasons set forth herein, the motion is **GRANTED**.

### I.  BACKGROUND

In June 2012, Plaintiff initiated this case in state court.  (Doc. 1-1 at 2).  He alleged that Defendant was his homeowners insurance carrier when a storm blew several shingles off of his roof which caused the roof to leak and part of the roof to fall into his home.  *Id.* at 3.  Plaintiff claimed that he reported the damage to Defendant, but Defendant could not inspect the home at that time.  *Id.*  Based on a contractor's recommendation, Plaintiff had the roof repaired to prevent further damage.  *Id.*  Defendant then denied coverage for the claim.  *Id.*  Plaintiff raises causes of action against Defendant for (1) breach of the common law duty of good faith and fair dealing; (2) violations of the Texas Deceptive Trade Practices Act ("DTPA"); (3) violation of Texas Insurance Code bad faith sections 541.060(a)(2)(A) and (a)(7); and (4) intentional infliction of emotional distress ("IIED").  *Id.* at 3-5.

Defendant subsequently removed the case to this Court based on diversity jurisdiction and now seeks summary judgment.  (Doc. 1 at 2-3; Doc. 15).  Defendant states, and has provided

supporting documentation showing, that immediately after the storm that is alleged to have damaged Plaintiff's roof, a tarp was placed on the roof to prevent further water intrusion. (Santacruz Depo., Doc. 16 at 20, 23).  Plaintiff did not know whether the shingles were blown off by the wind.  *Id.* at 19.  The next morning, Plaintiff reported the damage to Defendant and spoke to employee Almirna Martinez.  *Id.* at 22.  Plaintiff told Martinez about the storm and about the roof being tarped and stated that he had workers at the house ready to fix the roof.  *Id.* at 23-25. Because the workers were already on site, Plaintiff requested that Defendant send someone to his home to examine the roof.  *Id.* at 25.  Martinez informed Plaintiff that Defendant could send an adjuster to his home in a couple of days.  *Id.* at 26-27.  Nevertheless, Plaintiff had the entire roof replaced that day.[1]  *Id.* at 28-29, 31.  Thus, when Defendant's adjuster arrived at Plaintiff's home two days later to inspect the roof, it had already been replaced.  *Id.* at 29.  Defendant claims that due to its inability to investigate the loss, it did not indemnify Plaintiff's claim.  (Doc. 15 at 4).

## II.  APPLICABLE LAW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

[1] It is not clear from the record whether Martinez told Plaintiff to have the roof fixed or to tarp it. Plaintiff testified that Martinez told him Defendant had to examine the roof before it was repaired and that Plaintiff should tarp the roof or "patch it up" until then because Defendant could not send anyone that day.  (Santacruz Depo., Doc. 16 at 25, 27).  However, Plaintiff also testified that Martinez told him to complete the repairs and take pictures.  *Id.* at 24-26, 29.  While the facts are thus in dispute to some degree, that is ultimately not material because Plaintiff does not argue that Defendant is bound to provide coverage on that basis.  *See* TEX. INS. CODE § 4001.051 (providing that a person is an agent of the insurer if he or she examines into, adjusts, or aids in adjusting a loss for or on behalf of the insurer); *Clark v. Allianz Global Risk U.S. Ins. Co.*, 639 F.Supp.2d 751, 757 (N.D. Tex. 2009) (Means, J.) (collecting cases that address when an insurer is bound by the acts of its employee/agent).

2

matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A

party moving for summary judgment has the initial burden of  "informing the district court of the

basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.   Once

the moving party has properly supported its motion for summary judgment, the burden shifts to

the nonmoving party to "come forward with specific facts showing that there is a genuine issue

for trial."  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

(internal quotes omitted).   "Where the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Id.* (citation omitted).

Unsubstantiated beliefs are not competent summary judgment evidence.  *de la O v. Housing*

*Authority of City of El Paso*, 417 F.3d 495, 502 (5th Cir. 2005).   Nevertheless, when ruling on a

motion for summary judgment, the court is required to view all facts and inferences in the light

most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving

party.  *Matsushita*, 475 U.S. at 587.

 To state a claim for the common law tort of breach of the duty of good faith and fair

dealing, a plaintiff must allege that his insurer had "no reasonable basis" for denying payment of

a claim, and the insurer knew or should have known that fact.  *Universe Life Ins. Co. v. Giles*,

950 S.W.2d 48, 50-51 (Tex. 1997).   If the insurer had a reasonable basis to deny a claim, even if

that basis is ultimately determined to be erroneous, the insurer is not liable in bad faith.  *See*

*Lyons v. Millers Cas. Ins. Co.*, 866 S.W.2d 597, 600-01 (Tex. 1993).   Furthermore, where the

evidence shows a bona fide dispute regarding the insurer's liability under the policy, the insurer's

conduct does not rise to the level of bad faith. *Provident American Ins. Co. v. Castaneda*, 988 S.W.2d 189, 194 (Tex. 1998). The test of an insurer's common law duty of good faith and fair dealing requires that (1) the insurer's liability to perform its contractual obligation must have been reasonably clear at the time of the insurer's conduct; and (2) the insurer, at the time of the conduct claimed to be a breach of duty, must have known, or by the exercise of reasonable diligence should have known, that its liability was reasonably clear. *Universe Life*, 950 S.W.2d at 55. The reasonableness of an insurer's actions is determined using an objective standard: whether a reasonable insurer would have denied the claimant benefits under similar circumstances. *Republic Ins. Co. v. Stoker,* 903 S.W.2d 338, 340 (Tex. 1995).

The Texas Supreme Court has modified the common law standard of bad faith to mirror the statutory bad faith standard. *Id.* Thus, because the statutory and common law standards are now identical, when there is no merit to a common law bad faith claim asserting a wrongful denial of insurance benefits, any statutory claims for bad faith under the Insurance Code and the DTPA also fail. *See Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997) ("Although these claims are individual causes of action which do not depend on each other for support, Texas courts have clearly ruled that these extra-contractual tort claims require the same predicate for recovery as bad faith causes of action in Texas.").

### III. PARTIES' ARGUMENTS

Defendant contends that Plaintiff's homeowners policy required him to provide Defendant with access to the damaged property as often as Defendant required. (Doc. 15 at 5) (citing Homeowners Policy, Doc. 16 at 68). Defendant asserts that Plaintiff's replacement of the roof before Defendant could inspect the damage deprived it of access to the property and the

4

opportunity to investigate the loss and also constituted a violation of the policy's provisions.  *Id.*
at 5-6.  Further, Defendant argues that Plaintiff cannot prove that Defendant acted in bad faith in
denying his insurance claim because he cannot show either (1) that the damage to his roof was
covered under the policy; or (2) the amount of his damages since he replaced the roof before
Defendant could conduct its investigation.  *Id.* at 6-12, 14.  Because Plaintiff cannot make out a
common law bad faith claim, Defendant asserts that his claims for violation of the Insurance
Code and the DTPA, which are based on the same facts, also fail.  *Id.* at 14-16.  Lastly,
Defendant urges that Plaintiff's IIED claim should be dismissed because the predicate for the
claim – Defendant's refusal to pay under the homeowners policy – was not sufficiently extreme
or outrageous.  *Id.* at 16-17.

Plaintiff responds that he provided Defendant with immediate access to the damaged
property, but Defendant delayed in scheduling a meeting.  (Doc. 19 at 3).  Plaintiff points out that
Paragraph 3 of the insurance policy required him to protect the property from further damage and
make reasonable and necessary repairs, which he did.  *Id.* (citing Policy, Doc. 16 at 68).  Plaintiff
has submitted an affidavit from his roofer, Jose Pedraza, stating that wind blew the shingles off
the roof of Plaintiff's home in three areas, and a new roof had to be put on the home right away
because another storm was approaching and tarping or patching the existing roof would not have
protected the home from further damage.  (Doc. 19-1 at 30-31).  Pedraza also avers that the
damage to the inside of Plaintiff's home was caused by rain entering the home through the holes
in the roof.  *Id.* at 31.  Additionally, Plaintiff has attached his own affidavit stating that, upon
inspection, Defendant's adjuster could see from the collapsed ceiling that water had come into
the house through the roof.  (Santacruz Affidavit, Doc. 19-1 at 4-5).  Plaintiff argues that he has

proved that he suffered a covered loss under his homeowners policy as evidenced by Pedraza's sworn testimony that (1) the wind blew shingles off the house, and (2) rain entered through the roof in several different areas where the shingles had been blown off.  (Pedraza Affidavit, Doc. 19-1 at 30-31).

Moreover, Plaintiff contends that he has adequately proved his damages in that (1) he testified that prior to this storm, water had never leaked through the roof, (Santacruz Depo., Doc. 19-1 at 37, 44); (2) Pedraza described the damage and why the roof had to be replaced, (Pedraza Affidavit, Doc. 19-1 at 30-31); (3) Plaintiff described what the roof cost and stated that he paid the bill, (Santacruz Affidavit, Doc. 19-1 at 4); (4) Plaintiff explained which areas of his house were damaged, *id.* at 5; (5) Plaintiff provided an estimate of what it will cost to fix the damaged interior of his house and replace the damaged personal property, (Santacruz Depo., Doc. 19-1 at 46-47 & Ex. 6 and 8); and (6) Plaintiff testified that he moved out of his house on the day of the storm, has not moved back, and is paying $750 a month to live with his brother as well as paying his mortgage, *id.* at 43, 50-51.

Plaintiff asserts that he has established a fact issue as to whether a reasonable insurer would have denied his claim given that there is no other reasonable explanation as to how his property was damaged other than what Pedraza swore to.  (Doc. 19 at 6).  Additionally, Plaintiff claims that his case survives because Defendant did not investigate his claim by talking to Pedraza which, if Defendant had done, would have led it to conclude that wind blew off the shingles allowing the rain to go into the house through the openings.  *Id.*

In reply, Defendant maintains that it had a reasonable basis to deny payment of Plaintiff's claim because, through the acts of Plaintiff (1) Defendant could not investigate the claim to

6

assess whether it fell within the coverage afforded under the policy, and (2) Plaintiff has not properly established his right to coverage by showing both that the loss was caused by a covered incident and the extent of his damages. (Doc. 24 at 4). Defendant insists that, at a minimum, there is a bona fide dispute as to coverage for Plaintiff's claim, which precludes liability for a bad faith cause of action. *Id.* Further, Defendant asserts that Pedraza's testimony establishes only that roof shingles were missing, not that the claim is covered, and Pedraza is not qualified as an expert to testify as to causation, i.e. that the roof was damaged by "the direct force of wind making an opening in the roof allowing rain to enter." *Id.* at 6. Moreover, Defendant argues that Plaintiff failed to demonstrate an issue of fact as to damages because he did not present expert testimony on that point. *Id.* at 7-9.

## IV.  ANALYSIS

Plaintiff's homeowners policy included the following condition of coverage:

**3. Duties After Loss**

**a. Your Duties After Loss. In case of loss to covered property caused by a Peril Insured Against, you must:**

> **\* \* \***

> **(5) as often as we reasonably require:**

> **(a) provide us access to the damaged property.**

(Homeowners Policy, Doc. 16 at 68).

The gist of Defendant's argument is that Plaintiff violated this condition by repairing his roof before Defendant could conduct its investigation into the loss, thereby denying Defendant "access to the damaged property." (Doc. 15 at 5-6). The question is thus whether Defendant

acted reasonably in denying Plaintiff's claim for that reason or any other reason Defendant presents. *Universe Life Ins. Co.*, 950 S.W.2d at 50-51.

As an initial matter, Plaintiff's alleged violation of the policy's requirement that he allow Defendant access to the property was not a sufficient reason to deny coverage. *See* TEX. INS. CODE § 862.054 ("anti-technicality provision" stating that an insurance company cannot deny coverage to an insured based solely on the insured's breach of a technical provision of the policy unless the breach was a contributing cause to the damage at issue). For example, a Texas appeals court held that the fact that a boat was manned by only two men at the time it was destroyed by fire was no defense to the insured's suit for loss where the breach of the three-man-crew provision in the policy did not contribute to the destruction of the vessel. *Perez v. Los Fresnos State Bank*, 512 S.W.2d 796, 800-01 (Tex. Civ. App. 1974). Similarly, in this case, Plaintiff's immediate steps to repair his roof, which denied Defendant access to the damaged property, did not contribute to his home's damages. Thus, any technical breach of the policy provision requiring him to provide Defendant with access to the property is not a defense to this action. TEX. INS. CODE § 862.054.

The Court will next address whether Defendant's duty to cover Plaintiff's claim was reasonably clear at the time of Defendant's conduct. *Universe Life*, 950 S.W.2d at 55. It is Plaintiff's burden to prove the absence of a reasonable basis to deny the claim. *Id.* at 51. Generally, a claim for bad faith will not lie when an insurer denies a claim that is, in fact, not covered.[2] *Republic Ins. Co.*, 903 S.W.2d at 341. Plaintiff's homeowners policy covered damage

---

[2] The Texas Supreme Court has "left open the possibility that an insurer's denial of a claim it was not obligated to pay might nevertheless be in bad faith if its conduct was extreme and produced damages unrelated to and independent of the policy claim." *Progressive County*

caused by rain if the "direct force of wind or hail makes an opening in the roof . . . and the rain . . . enters through this opening and causes the damage." (Homeowners Policy, Doc. 16 at 64).

Plaintiff testified that he was not home when the storm damaged his home, and although he averred that his wife was home when water began coming into the home, no deposition testimony from her was entered into the record. (Santacruz Depo., Doc. 16 at 17). Pedraza's affidavit states in a conclusory manner that "wind had blown shingles off the roof and a large amount of water had gone through the holes in the roof." (Pedraza Affidavit, Doc. 19-1 at 30). Pedraza does not specify the basis for his belief that wind caused the damage, however. Conclusory statements are not sufficient to successfully oppose a summary judgment motion. *Greenberg v. Crossroads Systems, Inc.*, 364 F.3d 657, 670 (5th Cir. 2004).

As Defendant points out, there is insufficient evidence demonstrating that wind blew the shingles off the roof, as opposed to some other cause of the shingles coming off the roof such as wear and tear or the weight of the rain. (Doc. 15 at 2). As such, Plaintiff has not presented competent evidence that would create a factual issue as to whether the damage to his home was covered under his homeowners policy. *Republic Ins. Co.*, 903 S.W.2d at 341. He thus has not shown that Defendant had a duty to cover his claim that was reasonably clear at the time of Defendant's conduct. *Universe Life*, 950 S.W.2d at 55. Moreover, Defendant had a reasonable basis for denying payment of the claim when it did because, by the time an adjuster went to Plaintiff's house, it was not possible to investigate the cause of the damage to the old roof due to Plaintiff's actions in putting a new roof on the house. *Republic Ins. Co.,* 903 S.W.2d at 340.

---

*Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005). Plaintiff does not make this argument, however.

Plaintiff has not carried his burden of proving the absence of a reasonable basis to deny his claim. *Universe Life*, 950 S.W.2d at 51.

Plaintiff's claim fails for another reason as well.  An insured suing on an insurance policy has the burden of proving not only his right to recover, but he also must prove with reasonable certainty the amount of his recovery.  *Round Rock Indep. Sch. Dist. v. First Nat'l Ins. Co. of America*, 324 F.2d 280, 286 (5th Cir. 1963).  Under Texas law, proof of the amounts charged or paid does not demonstrate the reasonableness of the charges.  In *Dallas Ry. & Terminal Co. v. Gossett*, 294 S.W.2d 377, 382-83 (Tex. 1956), the Texas Supreme Court held that trial testimony regarding the nature of the plaintiff's physical injuries, the character of and need for the medical services rendered, and the amounts charged did not constitute sufficient evidence that her past medical expenses were reasonable.  *Id.*  The court further determined that where there was no testimony regarding the reasonable cost of future treatment and the jury thus was left to speculate as to the reasonable cost of such treatment, the judgment in the plaintiff's favor had to be reversed.  *Id.* at 383.  In a similar vein, a party seeking to recover for the cost of repairs must present competent evidence so that the trier of fact is justified in finding that the repairs are necessary and that the cost of the repairs is reasonable.  *Perry Homes v. Alwattari*, 33 S.W.3d 376, 385 (Tex. App.– Fort Worth 2000) (holding that plaintiffs' son's testimony about the cost and nature of the repairs, while perhaps sufficient to show that the repairs were necessary, was not sufficient to support the jury's finding that the expenses were reasonable).

In this case, Plaintiff presents three categories of damages.  First, the cost to replace the roof, which is supported by an invoice from Pedraza noting that Plaintiff paid him $3,900.00 for the job.  (Doc. 19-1 at 8).  Second is a list of personal and household items that Plaintiff alleges

were damaged during the storm when the roof fell into the house. *Id.* at 57-61. Plaintiff testified that he and his children compiled the list and came up with the dollar figures to estimate the value of each item. (Santacruz Depo., Doc. 19-1 at 49). Last is an estimate from a contractor listing repairs that need to be done to the inside of the house. (Doc. 19-1 at 55-56). None of these documents, however, is supported by any testimony, affidavit or other evidence that attests to the reasonableness of the damages sought; and the latter two documents do not attest to the necessity of the replacement or repair of the items in question. Accordingly, these documents do not constitute competent summary judgment evidence sufficient to withstand the dismissal of Plaintiff's common law bad faith claim. *Dallas Ry. & Terminal Co.*, 294 S.W.2d at 382-83. Therefore, Plaintiff's claims for bad faith, as well as for violations of the DTPA and Texas Insurance Code sections 541.060(a)(2)(A) and (a)(7), must be dismissed. *Higginbotham*, 103 F.3d at 460. Because Plaintiff did not respond to Defendant's arguments regarding the dismissal of his IIED claim, he has waived that claim. *See Scales v. Slater*, 181 F.3d 703, 708 n.5 (5th Cir. 1999) (noting that the plaintiff abandoned one of her claims in district court when she did not oppose the defendant's arguments for dismissal of that claim on summary judgment). Accordingly, Plaintiff's IIED claim is dismissed as well.

## V.  CONCLUSION

For the reasons stated above, Defendant's *Motion for Summary Judgment* (Doc. 15) is

**GRANTED**.

**SO ORDERED** on June 25, 2013.


_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE